UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. ) |
| ELBERT T. GRINSTEAD, | ) ) ) |
| Defendant. | ) |

## COMPLAINT

The United States of America, by Morris Pasqual, Acting United States Attorney for the Northern District of Illinois, brings this action for triple damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.* or, in the alternative, for repayment under theories of payment by mistake and unjust enrichment.

### Jurisdiction and Venue

1. This court has jurisdiction over this matter pursuant to 31 U.S.C. § 3730(a) and 28 U.S.C. § 1345.

2. Venue is proper in the Northern District of Illinois pursuant to 31 U.S.C. § 3732(a), 28 U.S.C. § 1391(b), and 28 U.S.C. § 1395(a).

### Parties

3. The plaintiff is the United States of America on behalf of the United States Railroad Retirement Board (RRB).

4. Defendant Elbert T. Grinstead (Grinstead) is a domiciliary of the State of Illinois and resides in Chicago, Illinois.

**Factual Background**

5.     The Railroad Unemployment Insurance Act (RUIA), as amended (45 U.S.C. § 351 *et seq.*), provides federal benefits for unemployed railroad workers and is administered by the RRB.

6.     To qualify for these federal benefits, unemployed railroad workers who meet the income and resource requirements of the program must disclose to the RRB any employment and income that might affect the claimant's entitlement to benefits. Benefits cannot be claimed or paid for any date that the claimant worked, accrued or received compensation from any employer, including non-railroad employers.

7.     Grinstead was employed by Soo Line/Canadian Pacific Railroad as a conductor. Grinstead was suspended from his position on or about April 15, 2019. Grinstead's railroad service enabled him to be eligible to collect RRB unemployment insurance benefits and Coronavirus, Aid, Relief and Economic Security (CARES) Act benefits during his period of unemployment.

8.     Grinstead submitted his completed RRB Form UI-1, "Application for Unemployment Benefits and Employment Service" ("Application"), through the U.S. Postal Service, and it was received on or about May 14, 2019, by the Chicago District Office located at 844 North Rush Street, Chicago, Illinois 60611.

9.     On the introduction page of the RRB's Online Unemployment Benefit Application, the applicant is instructed to read RRB Booklet UB-10 "Unemployment Benefits for Railroad Employees" before starting the RRB Form UI-1 Application.

10.     Grinstead agreed in his Application to Section F - Certification, which states: "I certify that the information I have provided on this form is true, correct and complete. I have been given a copy of booklet UB-10 and I have been told to read it. I know that I must immediately

2

report to the Railroad Retirement Board any changes which might affect my entitlement to benefits. I understand that disqualifications and civil and criminal penalties may be imposed on me for false or fraudulent statements or claims or for withholding information to get benefits. I understand and agree to the requirements set forth in Booklet UB-10."

11. RRB Booklet UB-10 stated, in part:

TO RECEIVE UNEMPLOYMENT BENEFITS YOU MUST

- be unemployed and receive no wages, salary, military reservist pay, pay for time lost, vacation pay, holiday pay, guarantee pay, or other remuneration from railroad or nonrailroad employment for the days you claim benefits. Under certain conditions, part-time work does not affect entitlement to benefits. However, you must report all full-time and part-time work you perform to the Railroad Retirement Board (RRB) on each claim for benefits you file. The RRB will then determine whether your pay is "subsidiary remuneration" and whether benefits are payable for days on which you worked part-time.

12. RRB Booklet UB-10 further warned: "You will be disqualified for both unemployment and sickness benefits for 75 days if you make a false or fraudulent statement or claim in order to receive benefits."

13. On the RRB's website there is a link to the RRB Booklet UB-10 on the "Unemployment Benefits Application, UI-1, Introduction Page" and on the "Claim for Unemployment Benefits UI-3, Introduction Page."

14. In order to receive unemployment benefits, an applicant must submit RRB Form UI-3, "Claim for Unemployment Benefits," every fourteen days because each claim period is two weeks.

15. For the unemployment insurance claim period beginning April 30, 2019, through unemployment insurance claim period beginning October 1, 2019, and claim period beginning March 27, 2020, through unemployment insurance claim period beginning August 30, 2021,

Grinstead electronically submitted 50 fraudulent UI-3 claim forms to the RRB through the U.S. RRB Benefit Online Services. On each of the claims Grinstead submitted, he certified that he had not worked for a non-railroad employer since his last day of railroad work.

16. Grinstead further acknowledged: "I certify that I have read Booklet UB-10 and understand it. I know that disqualifications and civil and criminal penalties may be imposed on me for false or fraudulent statements or claims or withholding information to get benefits. The information given on this form is true, correct and complete."

17. Grinstead was employed and received wages from Power Stop, LLC, during the time period of May 9, 2019, through October 14, 2019, and unemployment benefits from the State of Indiana from claim period beginning April 5, 2020, through claim period September 4, 2021.

18. Grinstead was also paid benefits under the RUIA in the claim periods beginning April 30, 2019, through October 1, 2019, and March 27, 2020, though claim period August 30, 2021.

19. In seeking and receiving unemployment insurance benefits, Grinstead concealed material facts, including his non-railroad employment and his earnings therefrom, when he knew or should have known that this employment was material to the RRB.

20. But for Grinstead's false statements and claims, he would not have received $40,301.19 from the RRB in unemployment insurance benefits for claim period beginning April 30, 2019, through unemployment insurance claim period beginning October 1, 2019, and claim period beginning March 27, 2020, through unemployment insurance claim period beginning August 30, 2021.

21. But for Grinstead's false statements and claims, he would not have received benefits under the CARES Act in the amount of $18,834.00 for the registration period beginning

4

May 11, 2020, through registration period ending July 20, 2020, and registration period beginning January 4, 2021, through registration period ending September 4, 2021.

22. As a result of Grinstead's actions, the United States has been damaged in the amount of $59,135.19.

## Count I
## False Claims Act — False Claims

23. The United States repeats and realleges each allegation set forth above in paragraphs 1 through 22 as if set forth fully herein.

24. By virtue of the acts described above, in 2019 through 2021, Grinstead knowingly presented, or caused to present, false or fraudulent claims for payment or approval in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733.

25. As used in this count, the term "knowingly" means that a person, with respect to information, (a) has actual knowledge of the information; (b) acts in deliberate ignorance of the truth or falsity of the information; or (c) acts in reckless disregard of the truth or falsity of the information.

26. The United States paid the false or fraudulent claims because of the acts of Grinstead and, as a result, the United States has incurred actual damages in the amount of $59,135.19 exclusive of interest and costs.

27. Pursuant to the False Claims Act, 31 U.S.C. § 3729(a)(1), as amended, Grinstead is liable to the United States under the treble damage and civil penalty provision of the False Claims Act.

## Count II
## Payment By Mistake

28. The United States repeats and realleges each allegation set forth above in paragraphs 1 through 22 as if set forth fully herein.

29. The United States made payments on the claims submitted by Grinstead under the erroneous belief that the claims for payment were based upon representations that were factually accurate and that represented actual dates of unemployment.

30. The United States' erroneous belief was material to the payments made by the United States to Grinstead.

31. Because of these mistakes of fact, Grinstead received monies to which he is not entitled.

32. By reason of the overpayments described above, the United States is entitled to damages in the amount of at least $59,135.19.

## Count III
## Unjust Enrichment

33. The United States repeats and realleges each allegation set forth above in paragraphs 1 through 22 as if set forth fully herein.

34. Because of Grinstead's conduct, he has been unjustly enriched with federal monies that in good conscience he should not be allowed to retain.

35. Grinstead has been unjustly enriched to the detriment of the United States in the amount of $59,135.19.

6

**Claim For Relief**

WHEREFORE, the United States demands judgment against the defendant as follows:

(a) on Count I (False Claims), judgment against defendant for treble the United States' single damages of $59,135.19 plus civil monetary penalties as set forth in the False Claims Act;

(b) on Count II (Payment by Mistake), judgment against defendant for single damages, pre-and post-judgment interest, and any such further relief as the court deems appropriate; and

(c) on Count III (Unjust Enrichment), judgment against defendant for single damages, pre-and post-judgment interest, and any such further relief as the court deems appropriate.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: _____
SCOTT D. HEFFRON
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-4190
scott.heffron@usdoj.gov